**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

---

| | | |
|---|---|---|
| CHOICE HOTELS INTERNATIONAL , INC., *et al.*, | : : | |
| Petitioners, | : | |
| | : | |
| v. | : | Civil No. 2:23-cv-03360-JMG |
| | : | |
| Jai Sai Baba LLC, *et al.*, | : | |
| Respondents. | : | |

---

**MEMORANDUM OPINION**

GALLAGHER, J.                                                    September 11, 2025

## I.      OVERVIEW

This matter arises from a final arbitration award issued on January 12, 2023, in favor of Petitioners. Before the Court is Petitioners' Application for Confirmation of Arbitral Award and Respondents' Motion to Vacate the Arbitral Award. Respondents argue the arbitral award must be vacated based upon three alleged violations of the Federal Arbitration Act ("FAA"): (1) the arbitrator's misconduct in refusing to hear evidence pertinent and material to the controversy, (2) the arbitrator's evident partiality, and (3) the arbitrator's exceedance of his authority by issuing a late decision. For the reasons discussed below, the Court grants Petitioners' Application for Confirmation of Arbitral Award and denies Respondents' Motion to Vacate the Arbitral Award.

## II.     PROCEDURAL HISTORY

On June 12, 2020, Respondents Jai Sai Baba, LLC, Dipesh Patel, and MDPD13 Investments, LLC filed an action in this Court against Petitioners Choice Hotels International, Inc. and Choice Hotels Owners Council alleging, among other claims, fraud and breach of

contract. ECF No. 16-1, at 10.[1]  However, on March 19, 2021, the Court granted Petitioners' Motion to Compel Arbitration and Stay Proceedings pursuant to the parties' agreement to arbitrate. *See* ECF No. 16-1, at 10; ECF No. 1, at 3.  On June 29, 2021, Respondents filed their Arbitration Demand against Petitioners.  ECF No. 16-1, at 10.  Discovery commenced and consisted of interrogatory responses and thousands of pages of documents.  ECF No. 31, at 6-7. After discovery, an eight-day hearing was held August 1-5 and 22-24, 2022.  ECF No. 16-1, at 10.  Testimony from 13 witnesses was presented and over 170 exhibits were produced.  ECF No. 31, at 7.

Following the hearing, Arbitrator Alan Baron ("Arbitrator Baron") decided that post-hearing oral arguments would be necessary and requested post-hearing briefing from the parties.  ECF No. 31, at 7.  Respondents believed the issuance of the arbitral award was due on October 23, 2022, and inquired about the award on October 27, 2022, and November 7, 2022. ECF No. 16-1 at 15.  On November 9, 2022, Respondents formally objected to the award as untimely.  ECF No. 16-1 at 15.  However, upon reviewing the briefs, and apparently determining that oral arguments were no longer necessary, Arbitrator Baron closed the record on October 24, 2022.  ECF No. 31 at 27.  The record was reopened on November 23, 2022, for post-hearing briefing to be submitted on the issue of attorney's fees and costs.  ECF No. 31 at 27.

On January 12, 2023, Arbitrator Baron denied all of Respondents' claims and issued an award in Petitioners' favor in the sum of $645,770.43 inclusive of fees, costs, and expenses.  ECF No. 1-3 at 10.

---

[1] Citations to page numbers are to the page numbers assigned by the Court's CM-ECF electronic docketing system.

Shortly after, on January 19, 2023, Petitioners filed their Application for Confirmation of Arbitral Award. ECF No. 1 at 1. On February 12, 2023, Respondents opposed such and filed their Motion to Vacate the Arbitral Award. ECF No. 14 at 1; ECF No. 16-1 at 6. Petitioners responded on March 9, 2023, by filing their Opposition to the Motion to Vacate the Arbitral Award. ECF No. 31 at 6.

## III.    LEGAL STANDARD

A district court must presume that an arbitral award is enforceable under the FAA. *See Sutter v. Oxford Health Plans LLC,* 675 F.3d 215, 219 (3d Cir. 2012) (citing *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24–25 (1983)).

"Arbitration awards are entitled to extreme deference." *Stone v. Bear, Stearns & Co.*, 872 F. Supp. 2d 435, 438 (E.D. Pa. 2012), *judgment entered*, 2012 WL 1946970 (E.D. Pa. May 29, 2012), and *aff'd*, 538 F. App'x 169 (3d Cir. 2013). Obtaining a vacatur of an arbitral award is a "steep climb." *Credit One Bank, N.A. v. Lieberman*, 2023 WL 4014471, at *2 (3d Cir. June 15, 2023) (quoting *France v. Bernstein*, 43 F.4th 367, 377 (3d Cir. 2022)). That climb is a burden belonging to the moving party. *Id*. (citing *Jersey Shore Univ. Med. Ctr. v. Loc. 5058, Health Prof'ls & Allied Emps.*, 2017 WL 1025180, at *3 (D.N.J. Mar. 16, 2017).

There are limited routes to vacate an arbitral award, including:

> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. §10(a)(1-4). These limited routes are described as "egregious departures from the parties' agreed-upon arbitration." *Hall St. Assoc., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 586 (2008).

Arbitrators have the power to interpret contracts, make credibility determinations, and act as the factfinders. *See Egan Jones Ratings Co. v. Pruette*, 765 F. App'x. 659, 662 (3d Cir. 2019) (citing *Acro–Polymers, Inc. v. Loc. 8-74*, 671 F.2d 752, 755 (3d Cir. 1982)). "'The Supreme Court has made clear that findings of fact and inferences to be drawn therefrom are the exclusive province of the arbitrator.'" *Id.* at 662 (quoting *Exxon Shipping Co. v. Exxon Seaman's Union*, 73 F.3d 1287, 1297 (3d Cir.1996)). Reviewing courts do not have the power to "reexamine the evidence" after the arbitrator. *Id.* (citing *Mut. Fire, Marine & Inland Ins. Co. v. Norad Reins. Co. Ltd.*, 868 F.2d 52, 56 (3d Cir. 1989); accord *Misco*, *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 36-38 (1987). "If an arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, the fact that a court is convinced he committed serious error does not suffice to overturn his decision." *Akers Nat. Roll Co. v. United Steel, Paper and Forestry, Rubber, Mfg., Energy, Allied Indus. and Serv. Workers Int. Union*, 712 F.3d 155, 160 (3d Cir. 2013) (citing *Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509 (2001)).

## IV.    DISCUSSION

The Court confirms the entire arbitral award because it is required to do so when there are no grounds for vacatur, as is the case here.

Respondents make three separate unavailing claims for vacatur. First, Respondents claim Arbitrator Baron engaged in misconduct under §10(a)(3) by refusing to hear additional evidence on an issue that was fully briefed. This claim is denied because Arbitrator Baron provided adequate opportunity for both parties to present their case. Arbitrator Baron's decisions regarding evidence, specifically not allowing Respondents to cross-examine a witness, did not produce an unfair hearing. Arbitrator Baron reviewed multiple forms of evidence to inform his findings and was not required to create endless opportunities for the parties to argue.

4

Next, Respondents claim Arbitrator Baron was partial under §10(a)(2) because Arbitrator Baron has a history of serving as an arbitrator for Choice and making factual determinations in their favor. This claim is denied because Arbitrator Baron acted normally within his authority. Respondents consented to Arbitrator Baron after learning of his prior professional relationship with Choice and utilized the opportunity to question him about this matter. In addition, Respondents have failed to provide any concrete evidence that Arbitrator Baron acted with bias. Respondents' arguments are centered around their disapproval of Arbitrator Baron's conclusions, which he had both the power and evidentiary support to make.

Last, Respondents claim Arbitrator Baron exceeded his powers under §10(a)(4) by issuing an award later than anticipated. This claim is denied because the contract governing the arbitration is silent on a deadline for issuance of an award, consequences of not adhering to an award deadline, and the applicability of the Commercial Arbitration Rules. Furthermore, Petitioners should not be punished for Arbitrator Baron's delay in good faith while thoughtfully considering the issues when Respondents were unharmed by such delay.

The entire arbitral award must be confirmed if there is no basis for vacatur. Therefore, the Court grants Petitioners' Application for Confirmation of Arbitral Award and denies Respondents' Motion to Vacate the Arbitral Award.

### a. Respondents had an adequate opportunity to present their case, and Arbitrator Baron considered more evidence than the affidavit in question.

Arbitrator Baron did not engage in misconduct as defined under 9 U.S.C. § 10(a)(3).

The hearing was held over eight days from August 1-5 and 22-24, 2022. ECF No. 31, at 7. Originally, the hearing was supposed to last five days total. *Id*. at 11 n.3. During Respondents presentation of their case, Respondents concluded that they would need the entire five days for

their arguments and evidence. *Id*. Arbitrator Baron and the parties agreed to such and decided that

Petitioners would present their case for three days from August 22-24, 2022. *Id*.

During Respondents presentation, Respondents called Michael Shemer, Choice's Vice

President of Strategic Finance and Financial Planning and Analysis, to testify about the key money

issue involving forgivable loans offered to prospective franchisees that Respondents alleged

Choice offset by taking money from the system fund. ECF No. 16-1 at 6, 11. Shemer testified

that Choice operated a system fund, which is comprised of money from an array of different

sources, to "drive profitability for franchisees." ECF No. 31 at 10. One of those sources is system

fees paid by franchisees. *Id*. Shemer continues by stating that approximately $250 million of the

$570 million system fund is derived from system fees. *Id*.

Further, Choice used approximately $4-6 million of the system fund in 2017 to fund key

money loans ("key money") to new franchisees. *Id*. Shemer's testimony is corroborated by system

fund financial statements. *Id*. Shemer explains that key money is offered to "new and prospective

franchisees an as incentive prior to the execution by the franchisee of a franchise agreement" and

is a "form of marketing." *Id*. Key money loans are not used until after the franchise agreement has

been executed and the franchisee meets certain criteria. *Id*. According to Shemer, key money is

used while negotiating a franchise agreement and not to solicit franchisees. *Id*. Any solicitation

comes from a separate fund entirely. *Id*. at 10-11.

The franchise disclosure document ("FDD") states that system fees will not be used to

solicit new franchisee. ECF No. 16-1 at 7. Furthermore, the franchise agreement states that system

fees may be used for, among other things, marketing. ECF No. 16-1, at 12-13.

However, on August 3, 2022, shortly after Shemer's testimony, Choice executives made

three public statements that Respondents characterized as contradicting Shemer. ECF No. 31, at

11.  The parties disagreed on this characterization, and Arbitrator Baron ordered Respondents and Petitioners to submit briefing addressing the key money issue prior to the start of Petitioners presentation. *Id*.  Upon Respondents' resting their case on August 5, 2022, Respondents did not call other witnesses to testify about the system fund or key money. *Id*.

Both parties submitted briefing on the issue, and Petitioners included an affidavit from Frank Cuomo, Choice's Senior Director of SEC Reporting, Technical & International Accounting. *Id*. Cuomo's affidavit mostly confirmed Shemer's testimony and addressed how the public statements made by Choice executives did not contradict Shemer. *Id*. at 11-12.  On August 19, 2022, Arbitrator Baron resolved the key money issue in Petitioners' favor. *Id*. at 12.  Respondents requested a reconsideration which was denied because Arbitrator Baron concluded that the "additional filings did not warrant reconsideration," and the hearing resumed on August 22, 2022. *Id*. Respondents further requested that they be allowed to cross-examine Cuomo, which Arbitrator Baron also denied. *Id*.

"'Arbitrator[s] are not constrained by formal rules of procedure or evidence… .'" *Calbex Min. Ltd. V. ACC Res. Co., L.P.*, 90 F. Supp. 3d 442, 459 (W.D. Pa. 2015) (quoting *Hoteles Condado Beach, La Concha & Convention Ctr. v. Union De Tronquistas Loc. 901*, 763 F.2d 34, 38 (1st Cir. 1985); *Bernhardt v. Polygraphic Co.*, 350 U.S. 198, 203–04 n.4 (1956)).  "Arbitrators have wide latitude in how they conduct proceedings; hence, a court's role in reviewing an arbitrator's procedural decisions is extremely limited." *Sabre GLBL, Inc v. Shan*, 779 F. App'x. 843, 856 (3d Cir. 2019) (citing *Off. & Prof'l Emps. Int'l Union, Loc. No. 471 v. Brownsville Gen. Hosp.*, 186 F.3d 326, 334-35 (3d Cir. 1999).  An arbitrator has unfettered control over what evidence to receive or reject, unless their decision amounts to misconduct.

Misconduct under § 10(a)(3) is not found in "every failure to receive relevant evidence;" it is only found when an arbitrator commits an "[error] which so affects the rights of a party that it may be said that he was deprived of a fair hearing." *Whitehead v. Pullman Grp., LLC*, WL 12915099, at *4 (E.D. Pa. Feb. 13, 2015), *aff'd Whitehead v. Pullman Grp., LLC*, 811 F.3d 116, 120 (3d Cir. 2016) (citing *Newark Stereotypers' Union No. 18 v. Newark Morning Ledger Co.*, 397 F.2d 594, 599 (3d Cir. 1968)). A "fair hearing" is defined as "one where the parties have notice and an opportunity to present evidence and arguments." *CPR Mgmt., S.A. v. Devon Park Bioventures, L.P.*, 119 F.4d 236, 245 (3d Cir. 2021) (citing *Newark Stereotypers' Union*, 397 F.2d at 600).

An arbitrator must provide the parties with an "adequate opportunity" to present their case with evidentiary support. However, an arbitrator is not required to permit the parties to present any and all evidence they wish. *See Vitarroz Corp. v. G. Willi Food Intern. Ltd.*, 637 F. Supp. 2d 238, 250-251 (D. NJ 2009) (citing *Sunshine Mining Co. v. United Steelworkers of Am., AFL–CIO*, 823 F.2d 1289, 1295 (9th Cir. 1987)). In *Vitarroz Corp.*, the court held that vacatur of the arbitral award was improper because the arbitration panel did not outright exclude evidence a party wished to present – it simply limited the testimony of one witness. *Id.* at 249. The panel initially shortened the witness's testimony length to 30 minutes each for direct and cross-examination due to a personal commitment of one of the arbitrators. *Id.* at 242. The cross examination was then further limited to 25 minutes after the direct testimony went ten minutes over the allotted time. *Id.* However, the Court pointed out that "a party does not have an absolute right to cross examination" in an arbitration proceeding. *Id*. at 250 (citing *Sunshine Mining Co.*, 823 F.2d at 1295).

A Third Circuit case similarly affirmed the notion that exclusion of certain evidence does not automatically render an arbitration hearing unfair. *Transtech Indus. v. A&Z Septic Clean*, 270 F. App'x. 200, 209 (3d Cir. 2008). The court rejected the petitioner's argument that the arbitration proceedings were unfair because they "lacked certain pertinent evidence, a live hearing, and cross-examination of witnesses" where there were "multiple submissions, voluminous supporting materials, and frequent opportunities for oral arguments" all considered by the arbitrator. *Id.*

In the present case, the eight-day arbitration hearing consisted of testimony from 13 witnesses, presentation of over 170 exhibits, and extensive briefing and arguments from the parties. ECF No. 31 at 7. The hearing was extended, at Respondents' request, to allow them five extra days to present their case. *Id*. at 11 n.3.

On the third day of the hearing, Respondents called Shemer, Choice's Vice President of Strategic Finance and Financial Planning and Analysis, to testify about key money. ECF No. 16-1, at 11. Respondents alleged that Shemer's testimony directly contradicted multiple public statements made by Choice executives. ECF No. 31, at 11. Petitioners denied such allegations, and, on the fourth day of the hearing, Arbitrator Baron ordered the parties to submit briefs addressing their positions on this issue. *Id*. On the fifth day of the hearing, Respondents rested their case. *Id*.

Both Respondents and Petitioners submitted briefing on whether Mr. Shemer should be recalled testifying in light of the allegedly contradictory testimony. *Id*. Petitioners submitted their brief and included an affidavit from Cuomo, Choice's Senior Director of SEC Reporting, Technical & International Accounting, that confirmed Shemer's testimony. *Id*. at 11-12. Respondents, however, did not include comparable evidentiary support with their brief. ECF No. 16-1, at 20. On August 19, 2022, Arbitrator Baron resolved the key money issue in favor of Petitioners, as the

Respondents failed to offer evidence during the presentation of their case to the contrary.  ECF No. 30, at 12.  Respondents requested reconsideration, Arbitrator Baron denied such, and the hearing continued with Petitioners' three-day presentation. *Id*.

Clearly, Arbitrator Baron thoroughly considered and ultimately rejected the issue raised by Respondents, and there was evidence available for Arbitrator Baron to point to in his decision.  Since Arbitrator Baron extended the hearing to allow Respondents to fully present their case to their satisfaction, reviewed briefing in support of and in opposition to Respondents' request for reconsideration, and considered a multitude of other evidence, the rejection of Respondents' request to cross-examine Cuomo cannot be deemed misconduct.

Similar to the defendants in *Vitarroz Corp.*, Respondents were limited in their ability to present all the evidence they wished.  Yet, instead of having 25 minutes to cross-examine a witness, Respondents were given extra days to present their case to the best of their ability as well as an opportunity to argue the key money issue in brief format.  Therefore, the inability to cross-examine Cuomo on its own did not deprive Respondents of a fundamentally fair hearing. Arbitrator Baron pointed to other parts of the record that supported his decision: Shemer's testimony, documentary evidence such as financial statements, and even the plain language of the franchise agreement.  ECF No. 31, at 21-22.  Respondents provide no concrete evidence to the contrary. Respondents simply claim that they could have elicited testimony from Cuomo to support their key money claims, but this is not a guarantee.  *Id*. at 16.

Since the right to cross-examine is not absolute, and there was ample opportunity for Respondents to provide other evidence to bolster their key money claims, the rejection of the cross-examination of a single witness does not amount to misconduct.  There is a voluminous record in this case, including examinations of other witnesses, documentary evidence, and many

submissions, similar to that in *Transtech Industries*, which Arbitrator Baron considered in reaching his decision.

The voluminous record here also works against Respondents' contention that Arbitrator Baron engaged in misconduct by not considering their breach of contract claim.  In Arbitrator Baron's award, he states that he reviewed briefing by both parties, Respondents' request for reconsideration, and Petitioners' response related to Respondents' key money claim.  Arbitrator Baron concluded that key money was used for marketing, not development, and was derived from a larger system fund, not system fees.  These facts refute Respondents' allegation that Choice breached its contract by impermissibly using system fees to fund key money loans.  It is fair to deduce, without evidence to the contrary, that Arbitrator Baron considered and rejected both the fraud and breach of contract claim.

Therefore, it is improper to order a vacatur of the award because Arbitrator Baron did not engage in misconduct as defined under the FAA.

**b.  Both parties chose Arbitrator Baron knowing of his previous professional relationship with Choice, and there is no concrete evidence of bias.**

Arbitrator Baron did not display partiality as defined under 9 U.S.C. § 10(a)(2).

Respondents and Petitioners agreed upon Arbitrator Baron prior to the start of the hearing.  ECF No. 31, at 23.  Arbitrator Baron served as the arbitrator in twelve previous hearings where Choice was a party; however, these hearings were limited to defaults by franchisees under the franchise agreement, not the issues involved here. *Id*. Arbitrator Baron disclosed this information and responded to all questions Respondents asked about such information.  ECF No. 31 at 23.  Satisfied with Arbitrator Baron's responses, Respondents stated "we have decided not to object and would like to proceed with Arbitrator Baron." *Id*.

The parties arbitrating have the power to select an arbitrator of their choosing, and they tend to select someone with experience in the industry at issue. *See Freeman v. Pittsburgh Glass Works, LLC*, 709 F.3d 240, 253 (3d Cir. 2013) (citing *Commonwealth Coatings Corp. v. Cont'l. Cas. Co.*, 393 U.S. 145, 150 (1968)). "If the parties are willing to proceed in the face of apparent bias, they should be free to do so." *Id.* at 253 (citing *Commonwealth Coatings*, 393 U.S. at 151).

Respondents and Petitioners were aware of Arbitrator Baron's prior professional relationship with Choice where he arbitrated twelve previous cases in which Choice was a party. Arbitrator Baron responded to all Respondents' questions regarding Arbitrator Baron's relationship, and Respondents declared they would not object to Arbitrator Baron and wished to proceed. ECF 31 at 23. Respondents cannot now claim, after fully and voluntarily participating in the hearing, that the very information they were aware of and affirmatively accepted is evidence of partiality. Furthermore, it would be inappropriate to find Arbitrator Baron was partial solely because of his prior strictly professional relationship with Choice as an impartial arbitrator, which merely indicates Arbitrator Baron has experience within the industry and is an arbitrator in demand. As far as the Court is aware, neither party had a connection to Arbitrator Baron beyond their knowledge of or experience with him in his professional capacity as an arbitrator. Therefore, the Court will not disturb their willing decision to choose him as their impartial arbitrator, even in the face of any alleged bias.

While proceeding with Arbitrator Baron, during a portion of Respondents' presentation, Respondents called Rick Summa, Head of Choice's Procurement Department, to testify about the issue of volume discounts. ECF No. 31, at 24. Summa testified that Choice, when limiting the number of qualified vendors, was obligated to obtain volume discounts for their franchisees. ECF No. 16-1, at 23. However, the franchise agreement states that Choice "may" limit the number of

vendors to obtain volume discounts.  ECF No. 1-3, at 4.  Arbitrator Baron, in his award, stated that "may" indicates "permissive rather than mandatory language," therefore, Choice was not required to obtain these discounts for its franchisees. *Id*. Respondents called two experts to support their position, but neither was able to establish that "these specific Claimants overpaid for particular products they purchased for their Choice hotels." *Id*.

Arbitrator Baron was unconvinced by Respondents' arguments and evidence for the volume discount issue, just as in the previously mentioned key money issue.  *Id.* at 1, 10.

For an arbitral award to be vacated under 9 U.S.C. § 10(a)(2), the partiality must be "evident," meaning it "must be sufficiently obvious that a reasonable person would easily recognize it." *Facta Health Inc. v. Pharmadent LLC*, 2024 WL 4345299, at \*7 (3d Cir. Sept. 30, 2024) (quoting *Freeman*, 709 F.3d at 253); *see, e.g., Freeman*, 709 F.3d at 254-55 (holding that the arbitrator did not display evident partiality when she failed to disclose that she received campaign funds from a minority owner of one of the parties where the funds were a matter of public record and made up a relatively small percentage of money raised during the arbitrator's campaign).  A claim for evident partiality needs more than appearance of bias alone. *Bapu Corp. v. Choice Hotels Intern., Inc.*, 371 F. App'x. 306, 310 (3d Cir. 2017) (citing *Apperson v. Fleet Carrier Corp.*, 879 F.2d 1344, 1358 (6th Cir. 1989)).  The claim must include "proof of circumstances powerfully suggestive of bias." *Karoon v. Nat'l. Sec. Corp.*, 2023 WL 2473371, at \*1 (3d Cir. Mar. 13, 2023) (quoting *Kaplan v. First Options of Chi., Inc.*, 19 F.3d 1503, 1523 n.30 (3d Cir. 1994), *aff'd*, 514 U.S. 938 (1995)). Proof of circumstances powerfully suggestive of bias is not found where a plaintiff merely alleges that that "only an arbitrator displaying evident partiality could have ruled in favor of [Defendant]." *Tonnelle N. Bergen, LLC v. SB-PB Victory, L.P.*, 2023 WL 7412936, at \*7 (E.D. Pa. Nov. 9, 2023).

In *Andorra Servs. Inc.*, the court held that there was no evidence of bias to vacate the arbitral award when the arbitrator refused to delay the proceedings so Respondents could receive additional evidence. *Andorra Servs. Inc. v. Venfleet, Ltd.*, 355 F. App'x. 622, 626 (3d Cir. 2009). The arbitrator justifiably relied on other evidence in reaching his conclusion and determined that the evidence in question was "immaterial" to the overall dispute and not worth delaying the proceedings over because it was not a key factor in his decision. *Id.* at 626-627. The Court found that this conduct from the arbitrator was not "'powerfully suggestive of bias'" and "did not 'so affect[] the rights of [appellants] that it may be said that [they were] deprived of a fair hearing." *Id.* at 627 (quoting *Kaplan*, 19 F.3d at 1523 n. 30) (quoting *Teamsters Local 312 v. Matlack, Inc.*, 118 F.3d 985, 995 (3d Cir. 1997)).

Similar to the arbitrator in *Andorra*, Arbitrator Baron relied on other evidence to support his conclusion as to the key money issue. Arbitrator Baron relied on "Shemer's testimony, the documentary and other record evidence, and Cuomo's affidavit" to conclude that Key money is not apportioned to solicit or advertise to potential franchisees. ECF 31, at 17. Cuomo's affidavit merely confirmed Shemer's testimony and explained that the Choice executives' public statements did not contradict Shemer's testimony. Arbitrator Baron received and considered both parties' briefs related to the public statements, but Arbitrator Baron was persuaded by Petitioners.

Shemer was Respondents' witness. Respondents were given an adequate opportunity to elicit testimony from him to support their claim that key money was used to solicit new franchisees. Respondents were also given additional time to present their arguments and evidence rebutting the key money issue, but they chose not to take advantage of that or call another witness on the issue. Arbitrators are not required to let the parties present every single piece of evidence or delay hearings and order additional evidence when the arbitrator deems such unnecessary. This

14

includes the parties not having an "absolute right" to cross-examination. This Court will not reexamine the evidence or Arbitrator Baron's factfinding on the key money issue when supporting evidence beyond Cuomo's affidavit is present.

Respondents also show dissatisfaction with Arbitrator Baron's decision regarding the issue of volume discounts. Respondents attempt to argue Arbitrator Baron was partial in determining that the there was no breach of contract or fraudulent or negligent misrepresentation by Petitioners related to volume discounts. Arbitrator Baron was persuaded by Petitioners' argument and evidence over Respondents', which he is within his authority to do. In his conclusion on volume discounts, Arbitrator Baron did not only rely on witnesses presented by Petitioners; Arbitrator Baron relied on the plain language of the franchise agreement as well as the lack of proof submitted by Respondents, particularly Respondents not including how they did not receive discounts themselves. ECF 1-3, at 5. When an arbitrator interprets a contract in good faith, as was done here, a court will not overturn his decision, even if the court disagrees with the arbitrator's analysis. The Court will not disrupt the Arbitrator Baron's conclusions.

Arbitrator Baron was within his authority to make credibility determinations, weigh the evidence, and resolve the facts, and Arbitrator Baron did just that in deciding to credit Petitioners' evidence on the key money issue and discredit Respondents' evidence on the volume discount issue. Respondents have provided no clear evidence to establish that his decisions were made because of bias, they merely express disapproval of his decisions, which is insufficient to establish evident impartiality. *Tonnelle N. Bergen, LLC*, 2023 WL 7412936, at *7.

Therefore, it is improper to order a vacatur of the award because Arbitrator Baron was not partial as defined under the FAA.

### c. Arbitrator Baron acted within the scope of his authority by arbitrating in accordance with the contract.

Arbitrator Baron did not exceed his powers under 9 U.S.C. § 10(a)(4).

An arbitrator exceeds his powers "only if the arbitrator acts outside the scope of his contractually delegated authority." *Transcon. Gas Pipe Line Co LLC v. Permanent Easement for 2.59 Acres, et al*, 834 F. App'x. 752, 761 (3d Cir. 2020) (quoting *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 569 (2013)). This occurs when an arbitrator "decides an issue not submitted to [it], grants relief in a form that cannot be rationally derived from the parties' agreement and submissions or issues an award that is so completely irrational that it lacks support altogether." *Davidson Design & Dev., Inc. v. Scorza*, 2025 WL 789546, at *1 (3d Cir. Mar. 12, 2025) (quoting *Sutter v. Oxford Health Plans LLC*, 675 F.3d 215, 219-220 (3d Cir. 2012)). Because an arbitrator's power comes from the agreement and submissions, an arbitrator can exceed his powers when he "award[s] remedies barred by the agreement." *Davidson Design & Dev., Inc. v. Scorza*, 2023 WL 7283179 at *2 (W.D. Pa. Nov. 3, 2023) (citing *Roadway Package Sys. Inc. v. Kayser*, 257 F.3d 287, 300-01 (3rd Cir. 2001)).

"Except where prohibited by the plain and express terms of the submission, an arbitrator is empowered to grant any relief reasonably fitting and necessary to a final determination of the matter submitted to him, including legal and equitable relief." *Sherrock Bros., Inc. v. DaimlerChrysler Motors Co., LLC*, 260 F. App'x. 497, 502 (3d Cir. 2008) (quoting *Bd. of Educ. of Dover Union Free School Dist. v. Dover–Wingdale*, N.Y.S.2d 270 (N.Y. App. Div. 1983)); *see College Hall Fashions, Inc. v. Phila. Joint Bd. Amalgamated Clothing Workers of Am.*, 408 F. Supp. 722, 728 (E.D. Pa. 1976)).

Arbitrator Baron issued the arbitral award on January 12, 2023. ECF No. 1-3, at 10. Petitioners allege the award was issued only ten days past the deadline set forth in the Commercial Arbitration Rules of the American Arbitration Association ("AAA"), which expired on January 2, 2022, thirty days after the reopened hearing was closed. ECF No. 31, at 28. Respondents allege this award came eighty days late, arguing that the deadline for the award was October 23, 2022, because all post-hearing briefing was due by September 23, 2022. ECF No. 16-1, at 27. However, exhibits were still being sent to Arbitrator Baron as late as October 7, 2022. ECF No. 31, at 27. Arbitrator Baron was determining if post-brief oral arguments were necessary and, after determining that they were not, he closed the hearing on October 24, 2022. *Id.* Arbitrator Baron then reopened the record on November 23, 2022, for the issue of attorneys' fees and costs, which required additional briefing. *Id.* All briefs were then submitted by December 2, 2022. *Id.*

If an arbitration clause within a contract clearly and unmistakably states that the arbitration will take place in a manner consistent with the AAA's Commercial Arbitration Rules, as is the case here, then those rules are incorporated into the contract. *See HealthplanCRM, LLC v. AvMed, Inc.*, 458 F.Supp.3d 308, 321-322 (W.D. Pa. 2020). The arbitration clause of the parties' contract explicitly maintains that they agree to be subject to final and binding arbitration "in accordance with the Commercial Arbtiration Rules of the American Arbitration Association." ECF No. 16-9 at 23. Rule 47 dictates, "[t]he award shall be made promptly by the arbitrator and, unless otherwise agreed by the parties or specified by law, no later than 30 calendar days from the date of closing the hearing, or, if oral hearings have been waived, from the due date set for receipt of the parties' final statements and proofs." Therefore, because there is no agreed upon deadline for the award within the parties' agreement, Arbitrator Baron was governed by the 30-day timeline set forth in the Commercial Rules. However, the Commercial Rules do not proscribe the consequences for

issuing an award outside of this timeline. More specifically, the Commercial Rules do not go so far as to say that an award is automatically invalid if issued late.

The Court is not aware of any cases where the Third Circuit addressed the issue of the implications of an untimely arbitral award when there is a deadline in place. In the Sixth Circuit, an appellant contended that because the arbitration board rendered its award after the fifteen-day deadline set forth in the arbitration agreement, the award must be rendered null and void because the board lost jurisdiction to issue such an award after the expiration of time. *Jones v. St. Louis-San Francisco RR Co.*, 728 F.2d 257, 264 (6th Cir. 1984). However, the Court found, "[s]ince the agreement in the case at bar did not unequivocally state that jurisdiction would terminate on the sixteenth day, we believe that the fifteen-day time period was a goal set to encourage prompt determination of the arbitrable issue. Therefore, the jurisdiction of the arbitration board to resolve this dispute did not expire until a reasonable time thereafter." *Id*. at 265. However, the Court ultimately concluded that the 14-month delay was not reasonale in light of persuasive authority from the Rules of the Federal Mediation and Conciliation Sergice which encouraged the rendering of awards no later than 60 days from the date of closing of the record. *Id*. at 264-65 (citing 29 C.F.R. § 1404.14). The Eleventh Circuit also upheld an untimely award, stating, "we shall not overturn the arbitrator's award where the losing party failed to object immediately upon the expiration of the deadline, especially where there has been no demonstration of any prejudice arising from the delay." *Davis v. Producers Agr. Ins. Co.*, 762 F.3d. 1276, 1287 (11th Cir. 2014); see see *U.S. Airline Pilots Ass'n v. U.S. Airways, Inc.*, 25 F. Supp. 3d 758, 773-74 (W.D. Pa. 2014), *aff'd*, 604 F. App'x 142 (3d Cir. 2015)  (declining to overturn an arbitrator's award issued 42 months after the hearing where there was no time limit established in the agreement and noting, "Plaintiff has not alleged that it complained about the delay prior to the Award being issued or that

it suffered prejudice from the delay and thus, even under the standard utilized in *Jones,* it would not be able to state a claim."). In deciding if an award should be vacated for untimeliness, the Second Circuit determined that the relevant inquiry was whether the losing party could show "actual harm", or prejudice caused by the delay. *Appel Corp. v. Katz*, 217 F. App'x. 3, 5 (2d Cir. 2007).

Respondents argue the delay equates to Arbitrator Baron exceeding his powers. ECF No. 16-1 at 24. Furthermore, Respondents argue they were "highly prejudiced" by this delay. ECF No. 16-1 at 28.

Regardless of whether the arbitral award was issued 80 days late, as per Respondents' argument, or 10 days late, as per Petitioners' argument, it does not impact the Court's conclusion. Although the contract invoked the Commercial Arbitration Rules, the contract included no language indicating the consequences of an award issued after the AAA's 30-day time frame. ECF No. 16-1 at 9.

Furthermore, Arbitrator Baron did not extend the time for making his award arbitrarily or without reason. 80 days is less than three times the period prescribed in the Commercial Arbitration Rules, which is not a significant extension, especially given the fact that Arbitrator Baron was still receiving hard copies of evidence, making determinations, and receiving submissions long after the hearing had concluded. Arbitrator Baron was in the process of deciding whether he needed oral arguments after the hearing to aid in his conclusion. ECF No. 31 at 7. The Sixth Circuit would provide Arbitrator Baron with a "reasonable time thereafter" to issue his award where prejudice was not shown. Given the time needed to review the briefing submitted in preparation for oral arguments and on the issue of attorneys' fees and costs, the Court finds that

19

the slight delay was warranted and reasonable. Even assuming that there was an 80-day delay in issuing the award, that is not nearly as excessive as the 14-month delay in *Jones*.

Regardless, Respondents have failed to prove that Arbitrator Baron's delay was prejudicial to them. Respondents generally argue, "the briefing of attorneys' fees prior to the issuance of an award was highly prejudicial to Respondents. Respondents were required to have its counsel draft an attorneys' fees brief on fees it would never recover and incurred more fees by doing so." ECF No. 16-1 at 28. However, they have provided no evidence, including the amount incurred in additional fees for submitting this briefing, nor an explanation as to how the time spent briefing the request for attorneys' fees was harmful to them. There is no indication that either party objected to the briefing ordered by Arbitrator Baron. Moreover, there is no express provision in their contract nor the Commercial Arbitration Rules that says the issue of attorneys' fees and costs should be addressed after the issuance of an award, so Arbitrator Baron was within his right to request briefing on that matter when he did. *Stone,* 872 F.Supp.2d at 451-452 ("Third, several courts, including the Third Circuit, have recognized that 'harmless' or 'trivial' instances of an arbitrator overstepping his or her authority do not justify vacatur under Section 10(a)(4)."); *Brentwood Med. Associates v. United Mine Workers of Am.*, 396 F.3d 237, 243 (3d Cir. 2005), *as amended* (Mar. 17, 2005) ("Consequently, the arbitrator's error was harmless, since he would have arrived at the conclusion he reached here, even absent the discussion of the aberrant language.")

On top of the fact that the delay was de minimus and Respondents have failed to articulate how they were unduly prejudiced by it, Petitioners should not be penalized for Arbitrator Baron's delay which they played no part in. *Tomczak v. Erie Ins. Exch.*, 268 F. Supp. 185, 189-90 (W.D. Pa. 1967) ("If the two-week delay is deemed an irregularity, it was de minimus, and to accede to defendant's demand to return the case to the AAA for another arbitration proceeding would visit a

harsh and unwarranted penalty upon the plaintiff who was not in any way to blame."); *Davis*, 762 F.3d. at 1287 (quoting *Lodge No. 725, Int'l. Ass'n of Machinists v. Mooney Aircraft, Inc.*, 410 F.2d 681, 683 (5th Cir.1969)) ("'We would be extremely loath to penalize the beneficiary of the award because of the lapse of time over which he had no possible control.  This is especially true because of the extreme shortness of the period.'"). "[T]he considerable time and effort expended which culminated in the award should not be for naught except for compelling reasons." *Tomczak,* 268 F. Supp. at 189. All deadlines set by Arbitrator Baron were met by both parties who put considerable effort and time into this case.  Dates allotted for the hearing as well as due dates for briefs and replies were adhered to.  The issuance of the award later than the timeline set forth in the Commercial Arbitration Rules does not change the outcome of the substantive award.

Considering of the absence of controlling Third Circuit precedent on the issue of untimely arbitration awards and the highly deferential standard in favor of affirming arbitration awards, this Court finds it would be inappropriate to vacate the entire arbitral award for the slight delay.

Therefore, it is improper to order a vacatur of the award because Arbitrator Baron did not exceed his powers as defined under the FAA.

**d.      The Court will confirm the arbitral award in its entirety because there is no basis to vacate the award on any issue.**

There is no basis to vacate the arbitral award.

Unless a court vacates an arbitral award as outlined in 9 U.S.C. §10(a)(1-4) or modifies the award under 9 U.S.C. §11, an application to confirm an award "must" be granted.  *See* 9 U.S.C. §9; *Teamsters Local 177 v. UPS*, 966 F.3d 245, 248, 256 (3d Cir. 2020).

As outlined above, none of Respondents' claims meet the high legal standard required for vacatur.

Therefore, the entire arbitral award must and will be confirmed.

**V.      CONCLUSION**

For the reasons stated above, the Court grants Petitioners' Application for Confirmation of Arbitral Award (ECF No. 1) and denies Respondents' Motion to Vacate the Arbitral Award (ECF No. 16).


BY THE COURT:


*/s/ John M. Gallagher*
JOHN M. GALLAGHER
United States District Court Judge